IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROXANNE VAVASES and JOHN VAVASES, | ) |
| Plaintiffs, | ) 2:20-cv-404 |
| | ) Judge Marilyn J. Horan |
| vs. | ) |
| CALIFORNIA AREA SCHOOL DISTRICT and MICHAEL S. SEARS, SUPERINTENDENT, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

In March 2020, Plaintiffs, Roxanne Vavases and husband John Vavases, filed suit against Defendants, California Area School District and Michael S. Sears, superintendent. (ECF No. 1). Now before the Court is their Second Amended Complaint, in which Mr. and Mrs. Vavases bring claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*; the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 794; as well as claims for intentional infliction of emotional distress and loss of consortium under Pennsylvania common law. (ECF No. 15). The School District and Mr. Sears respond with a Partial Motion to Dismiss. (ECF No. 17). The parties have briefed the issues, (ECF Nos. 18, 19), and the matter is now ripe for decision. For the following reasons, Defendants' Partial Motion to Dismiss will be granted in part and denied as moot in part.

**I. Background**

Roxanne Vavases began working for the California Area School District in 2003. (ECF No. 15, at ¶ 10). She "taught sixth-grade science and other subjects including K–8 gifted

education, in effect carrying a double teaching load in some years." *Id.* She was also chosen as the sixth-grade team leader, which made her responsible for coordinating the activities of the other sixth-grade teachers. *Id.* at ¶ 12.

In 2015, Mrs. Vavases was diagnosed with "Stiff Person Syndrome," a rare autoimmune disorder in which "patients can experience sudden and painful muscle contractions" that can be "so severe as to cause bones to break." *Id.* at ¶ 13. According to Mrs. Vavases, "sudden intense emotional stress, unexpected strong physical contact, and other situations [that] cause muscles suddenly to become very tense" may trigger these muscle contractions. *Id.* There is no cure for Stiff Person Syndrome, but an inpatient hospital treatment, called aggressive immune globulin therapy, mitigates its effects. *Id.* at ¶ 14. This treatment requires a three-day hospital stay approximately every thirty to sixty days. *Id.* As a result of her diagnosis, Mrs. Vavases requested, and the School District granted, reasonable accommodations before the 2016–17 school year began. *Id.* at ¶ 15. These accommodations included "the use of sick time for medical treatment, use of a walker and assistance with lifting as needed, the ability to wear more comfortable loose-fitting clothing when needed, use of an elevator key when needed for travel within the building, and more frequent bathroom breaks." *Id.* With these accommodations in place, Mrs. Vavases states that she performed the essential functions of her job. *Id.*

At the beginning of the 2017–18 school year, Michael Sears became the superintendent of the School District. *Id.* at ¶ 16. According to Mrs. Vavases, "there was a marked change in attitude toward [her] disability" following Mr. Sears's promotion, as she "became the subject of increased scrutiny, secretive communications, harassment, and disparate treatment orchestrated by Mr. Sears." *Id.* In October 2017, Mrs. Vavases went to the hospital for a scheduled treatment, but due to serious complications, stayed in the hospital for nearly two weeks. *Id.* at

¶ 17.  Mrs. Vavases expected to return to work a few days after she was discharged.  *Id.* at ¶ 18.  However, her school principal, Raymond Huffman, informed her that Mr. Sears would not allow her to return "unless and until she produced an 'unconditional medical release,' after a complete medical assessment by her physician."  *Id.*  The School District business manager confirmed that per Mr. Sears's order, Mrs. Vavases needed to produce an "unconditional medical release" before she would be permitted to return to work.  *Id.*  Mrs. Vavases alleges that "no other teacher in the District has been required to produce an 'unconditional medical release' following a hospital stay."  *Id.*  Mrs. Vavases emailed Mr. Huffman, informing him that she believed that the demand for an "unconditional medical release" violated the ADA and PHRA.  *Id.* at ¶ 19.  When she later spoke with Mr. Huffman, he "told her that Mr. Sears was furious when he saw her e-mail."  *Id.*  Afterward, the business manager emailed Mrs. Vavases, "stating that the District simply wanted something from her doctor stating that she was able to return to work."  *Id.*

The day after Mrs. Vavases's doctor faxed a note to the School District, Mrs. Vavases returned to work.  *Id.* at ¶ 20.  The following school day, however, Mr. Huffman went to Mrs. Vavases's classroom and informed her that although she was permitted to be at work, Mr. Sears was not happy that she returned to work before receiving his consent.  *Id.*  Later, Mr. Huffman shared with Mrs. Vavases that "Mr. Sears did not like the fact that she was sick and missed work."  *Id.*  The stress of this incident caused Mrs. Vavases to experience muscle spasms, which were so serious that she "had to be taken out of the building by ambulance and then life-flighted to" the hospital.  *Id.* at ¶ 21.

In November 2017, Mrs. Vavases found out that Mr. Sears directed Mr. Huffman to provide him with regular updates on Mrs. Vavases's health, instructing Mr. Huffman to avoid putting anything in writing.  *Id.* at ¶ 23.  Mr. Sears also questioned her activities with the gifted

program and directed Mr. Huffman to monitor her classroom performance. *Id.* Additionally, around this time, Mrs. Vavases requested that the School District restore the sick days she used when she was out due to Mr. Sears's demand for an unconditional medical release. *Id.* at ¶ 22. But Mr. Huffman told her, "That's not going to happen. Mr. Sears already said so." *Id.*

Mrs. Vavases then "suffered another medical setback and needed to be off work for chemotherapy." *Id.* at ¶ 24. During this time, other teachers could donate their sick days to Mrs. Vavases, but "Mr. Sears also attempted to interfere . . . by instructing the business office not to accept donations of multiple days." *Id.* at ¶ 27. Mrs. Vavases also applied for leave under the Family and Medical Leave Act (FMLA). *Id.* at ¶ 24. In April 2018, Mr. Sears denied her application "on the grounds that she had not worked enough hours to qualify for FMLA leave," despite the fact that Mrs. Vavases "had been granted FMLA leave in 2015, based on essentially the same work hours, at a time when Mr. Sears was not superintendent." *Id.* at ¶¶ 24–25. The teachers' union filed a grievance on her behalf. *Id.* at ¶ 26. The School District then informed that Mrs. Vavases could reapply for leave. *Id.* In July 2018, the School District approved Mrs. Vavases's FMLA application. *Id.*

In May 2018, after being hospitalized for a new medical emergency, "Mr. Sears directed the business office to send [Mrs. Vavases] a release so that the District and Mr. Sears could gain access to her medical records." *Id.* at ¶ 28. Mr. Sears then demanded a meeting with Mrs. Vavases "to address what he characterized as 'confusing and conflicting' return to work authorizations." *Id.* at ¶ 29. At the meeting, held while Mrs. Vavases was still out of work and recovering from surgery, "Mr. Sears interrogated [her] for over an hour in a very unprofessional, intimidating and embarrassing manner." *Id.* at ¶ 30. He "spoke loudly, threw his arms into the

4

air," and "kept repeating that he 'needed more information,' 'wants more explanations,' 'needed to get to the bottom of things,' and so on." *Id.*

Mrs. Vavases returned to work for the fall 2018 semester, and Mr. Sears's "harassment and intimidation" continued. *Id.* at ¶ 31. On at least three occasions, Mr. Sears came to the cafeteria with a pen and notebook and observed Mrs. Vavases as she monitored students before the school day began. *Id.* at ¶ 32. This behavior stopped after Mrs. Vavases complained to the teachers' union. *Id.* In September 2018, one of Mrs. Vavases' students sustained a minor injury when he engaged in horseplay with another student in the boys' bathroom. *Id.* at ¶ 31. Mr. Sears demanded an investigation of the incident. *Id.* In October 2018, Mr. Sears directed Mr. Huffman to provide him with the lesson plans for a social studies class co-taught by Mrs. Vavases and another sixth-grade teacher. *Id.* at ¶ 33. Mr. Sears asked that Mr. Huffman identify Mrs. Vavases's parts of the lesson plans. *Id.* Mr. Sears complained that the lesson plans were not detailed enough and demanded that Mrs. Vavases provide more detailed lesson plans. *Id.* The teachers' union again interceded. *Id.*

In December 2018, Mr. Sears met with Mrs. Vavases to address possible disciplinary action due to "an unwarranted parental complaint" related to a student's Individualized Education Plan. *Id.* at ¶ 34. Mrs. Vavases produced evidence that she had followed the student's IEP, rebutting Mr. Sears's accusations that she had not met the student's needs. *Id.* When a union representative who was present in the meeting "asked Mr. Sears what more it would take for him to be satisfied," Mr. Sears ended the meeting abruptly. *Id.* Afterward, Mr. Sears pulled the student from Mrs. Vavases's classroom and hired a substitute teacher to teach the student from Mrs. Vavases's lesson plans. *Id.* In January 2019, "Mr. Sears's unfounded allegations, intense scrutiny, and intentionally harassing behavior" forced Mrs. Vavases "to take a medical

sabbatical for the remainder of the school year for restoration of her health." *Id.* at ¶ 35. Mrs. Vavases intended to return for the 2019–20 school year. *Id.*

Mrs. Vavases subsequently filed an EEOC charge against the School District. *Id.* at ¶ 36. During the EEOC's investigation, and shortly before the 2019–20 school year began, the School District informed Mrs. Vavases that she no longer would be teaching sixth grade. *Id.* Instead, she was reassigned to a seventh- and eighth-grade science and STEM position. *Id.* According to Mrs. Vavases, the School District's decision violated the collective bargaining agreement between the teachers' union and the School District, because it was made almost a month after the deadline stated in the agreement and because "there were qualified teachers with less seniority who were not involuntarily transferred." *Id.* at ¶ 37. The School District's decision to reassign Mrs. Vavases "resulted in a significant change in the terms and conditions of [her] employment." *Id.* at ¶ 38. Mrs. Vavases's sixteen years of experience allowed her to teach sixth-grade science with minimal preparation, but the reassignment "required immense preparation outside of class," including developing the seventh-grade STEM curriculum from scratch. *Id.* The physical and mental demands of Mrs. Vavases's new position compelled her "to take a medical sabbatical for the first semester of the 2019–2020 school year and, in January 2020, to go on unpaid medical leave, effectively ending her teaching career." *Id.* at ¶ 39.

Based on these facts, Mrs. Vavases alleges that the School District discriminated against her on the basis of disability. She also alleges that Mr. Sears held "personal animosity toward her," engaging in all of the foregoing conduct with the intention of ending her teaching career. *Id.* at ¶ 76. Mrs. Vavases and her husband, John Vavases, thus filed this action against the School District and Mr. Sears. *Id.* at ¶ 4. In Counts I through VI of the Second Amended Complaint, Mrs. Vavases brings claims against the School District for disability discrimination

and retaliation under the ADA, the PHRA, and § 504 of the Rehabilitation Act. *Id.* at ¶¶ 40–71. Mrs. Vavases also brings claims against Mr. Sears: in Count VII, for aiding and abetting discrimination and retaliation in violation of the PHRA, and in Count VIII, for intentional infliction of emotional distress. *Id.* at ¶¶ 72–78. Lastly, Mr. Vavases brings a loss of consortium claim against Mr. Sears in Count IX. *Id.* at ¶¶ 79–80.

Mr. Sears moves to dismiss Counts VIII and IX for failure to state a claim. (ECF No. 17). Mr. Sears and the School District also seek dismissal of Mrs. Vavases's demand for punitive damages in relation to Counts I, III, and VIII. *Id.*

## II. Legal standard

In deciding a motion to dismiss a complaint under Rule 12(b)(6), a court must first "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (internal quotations omitted). The court then must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* A complaint is sufficient only when it is facially plausible, meaning that the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To be plausible on its face, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

## III. Discussion

A. Count VIII—Mrs. Vavases's intentional infliction of emotional distress claim against Mr. Sears

Mr. Sears first seeks dismissal of Count VIII, in which Mrs. Vavases brings a claim for intentional infliction of emotional distress against him. (ECF No. 17, at ¶ 5). Mr. Sears challenges Mrs. Vavases's claim on the ground that his alleged conduct is not sufficiently extreme and outrageous so as to be actionable. (ECF No. 18, at 5–7). He also argues that, to the extent that Mrs. Vavases sues him in his official capacity, he is entitled to sovereign immunity. *Id.* at 8.

A claim for intentional infliction of emotional distress requires the plaintiff to plead facts showing that (1) the conduct at issue was extreme and outrageous; (2) the conduct was done intentionally or recklessly; (3) the conduct caused emotional distress; and (4) the resultant distress was severe. *Gray v. Huntzinger*, 147 A.3d 924, 927 (Pa. Super. Ct. 2016). As to the first element, "'liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Goodson v. Kardashian*, 413 Fed. App'x. 417, 418 (3d Cir. 2011) (quoting *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 177 (Pa. Super. Ct. 1996)). Rather, the conduct at issue "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society." *Reardon v. Allegheny College*, 926 A.2d 477, 488 (Pa. Super. Ct. 2007) (internal quotation omitted). A reviewing court must decide, as a preliminary matter, whether the alleged conduct meets this high standard. *Martin-Mcfarlane v. City of Phila.*, 299 F. Supp. 3d 658, 671 (E.D. Pa. 2017); *Allen v. Lackawanna Cty. Bd. of Comm'rs*, 2019 U.S. Dist. LEXIS 144521, at *46 (M.D. Pa. Aug. 23, 2019) ("The Court's role at the motion to dismiss stage is something of a gate-keeper, ensuring that the facts of the complaint afford relief.").

In the employment context, the Third Circuit has explained that "it is extremely rare to find conduct . . . that will rise to the level of outrageousness necessary to provide a basis for

recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988). Courts applying Pennsylvania law have acknowledged that these "extremely rare" circumstances may exist, for example, where "an employer engaged in both sexual harassment and other retaliatory behavior against an employee," *id.*; *see also, e.g.*, *Frankhouser v. Clearfield Cty. Career & Tech. Ctr.*, 2019 U.S. Dist. LEXIS 44559, at *42 (W.D. Pa. Mar. 19, 2019) (noting the same), or where an employer's conduct "is intended to cause a worsening of a disabled person's physical symptoms," *Shaner v. Synthes (USA)*, 204 F.3d 494, 508 (3d Cir. 2000). That said, in the vast majority of employment cases, courts have found that although employment discrimination is "reprehensible," it generally "does not support an intentional infliction of emotional distress claim." *Timm v. Manor Care, Inc.*, 2006 U.S. Dist. LEXIS 11342, at *17–18 (W.D. Pa. Mar. 20, 2006) (internal quotations omitted) (collecting cases). For instance, courts have held that an "employer engag[ing] in a premeditated plan to force an employee to resign by making employment conditions more difficult," *Cox*, 861 F.2d at 395 (citing *Madreperla v. Williard Co.*, 606 F. Supp. 874, 880 (E.D. Pa. 1985)), and "highly provocative racial slurs and other discriminatory incidents," *Jafar v. Wells Fargo Bank*, 2015 U.S. Dist. LEXIS 49876, at *7 (E.D. Pa. Apr. 15, 2015) (internal quotations omitted), are not enough. Harsh actions, even when paired with harmful motives, typically are "not so extreme as beyond all bounds of decency." *Mulgrew v. Sears Roebuck & Co.*, 868 F. Supp. 98, 104 (E.D. Pa. 1994).

Mrs. Vavases argues that Mr. Sears's "continuing course of behavior . . . resulted in an oppressive work atmosphere" that, when coupled with the retaliation that she suffered, is sufficiently extreme and outrageous. (ECF No. 19, at 15). She alleges that Mr. Sears, as the new superintendent, demanded proof of her medical condition and ability to work that had not been

previously requested of her or other teachers; that Mr. Sears improperly expressed concern about the effect of Mrs. Vavases's disability on her job performance, and even questioned her job performance in various meetings and investigations; and that Mr. Sears interfered with her benefits, such as when he denied her request for FMLA leave, although the previous administration had granted her request in similar circumstances. Mrs. Vavases also alleges that Mr. Sears's animosity toward her led him to engage in this course conduct with the intention of ending her teaching career. However, these circumstances alleged by Mrs. Vavases, while certainly "not an enviable position to be in," *Mulgrew*, 868 F. Supp. at 104, evince a typical, rather than an exceptional, case of employment discrimination. Although Mr. Sears's alleged conduct may have been improper, and at times offensive or even belligerent, his conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society." Mrs. Vavases has therefore failed to plead facts that reach the high standard of "extreme and outrageous" that is required to state a claim for intentional infliction of emotional distress. Mr. Sears's Motion to Dismiss therefore will be granted as to Count VIII. Accordingly, the Court does not need to reach the issue of sovereign immunity in relation to this claim, as such issue is moot.

B. Count IX—Mr. Vavases's loss of consortium claim against Mr. Sears

Next, Mr. Sears seeks dismissal of Mr. Vavases's loss of consortium claim, found in Count IX. (ECF No. 17, at ¶ 5). Mr. Sears argues that if Mrs. Vavases's intentional infliction of emotional distress claim fails, then Mr. Vavases's loss of consortium claim also fails because it is derivative of Mrs. Vavases's claim. (ECF No. 18, at 8–9). Mr. Vavases does not dispute that his claim is derivative of his wife's. (ECF No. 19, at 15). Having found that Mrs. Vavases's

intentional infliction of emotional distress claim fails, Mr. Vavases's loss of consortium claim likewise fails. Mr. Sears's Motion to Dismiss therefore will be granted as to Count IX.

C. Punitive damages in Counts I, III, and VIII

Lastly, the School District and Mr. Sears seek dismissal of Mrs. Vavases's demand for punitive damages in Counts I, III, and VIII. (ECF No. 17, at ¶ 5; ECF No. 18, at 9). In response, Mrs. Vavases withdraws her claim for punitive damages in Counts I and III, that is her ADA and § 504 claims against the School District. (ECF No. 19, at 16). The School District's Motion to Dismiss the demand for punitive damages against it will therefore be denied as moot. Mrs. Vavases maintains, however, that punitive damages are available in relation to the intentional infliction of emotional damages claim in Count VIII. *Id.* Again, given this Court's finding that the intentional infliction of emotional distress claim fails and that Count VIII will be dismissed, Mrs. Vavases's demand for punitive damages in relation to this claim is moot. Thus, Mr. Sears's Motion to Dismiss will be denied as moot as to the demand for punitive damages in Count VIII.

**IV. Conclusion**

THEREFORE, based on the foregoing, Defendants' Partial Motion to Dismiss is GRANTED IN PART and DENIED AS MOOT IN PART.

The Motion is granted as to Counts VIII and IX, which contain claims against Mr. Sears for intentional infliction of emotional distress and loss of consortium, respectively. Counts VIII and IX are dismissed.

The Motion is denied as moot in relation to the demands for punitive damages in Counts I, III, and VIII, as Plaintiff withdraws the demands in Counts I and III, and Count VIII is dismissed.

IT IS SO ORDERED.

DATE  September 17, 2020

                                                                                              _____
                                                                                              Marilyn J. Horan
                                                                                              United States District Judge